

# IN THE
# TENTH COURT OF APPEALS

## No. 10-15-00218-CR

## EX PARTE MARCUS PILKINGTON

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2015-2154-2**

## No. 10-15-00219-CR

## EX PARTE REGINALD WEATHERS

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2015-2155-2**

## O P I N I O N

Marcus Pilkington and Reginald Weathers filed applications for writ of habeas corpus, asserting that they were being illegally confined because they were arrested without probable cause that they were guilty of the offense of engaging in organized

criminal activity.  After hearings, the trial court found that the arrest-warrant affidavits established probable cause and denied habeas relief to Weathers and Pilkington.  They both appeal, identically asserting in their sole issue that the affidavit lacks probable cause because it fails to allege an agreement or act by Weathers or Pilkington and that "no evidence was introduced at the hearing to establish the required conduct" for committing the offense of engaging in organized criminal activity.

## I.

> An affidavit supporting an arrest warrant is denominated as a complaint in the Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN. arts. 15.04, 15.05 (Vernon 2005); *Weems v. State,* 167 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).  By statute, the complaint must, among other matters, "show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense."  TEX. CODE CRIM. PROC. ANN. art. 15.05(2).

> To satisfy the Fourth Amendment, the complaint "must provide the magistrate with 'sufficient information to support an independent judgment that probable cause exists for the warrant.'"  *McFarland v. State,* 928 S.W.2d 482, 509 (Tex. Crim. App. 1996) (quoting *Jones v. State,* 568 S.W.2d 847, 854 (Tex. Crim. App. 1978)); *Weems,* 167 S.W.3d at 356; *accord Bell,* 169 S.W.3d at 390.

*Glaze v. State,* 230 S.W.3d 258, 260 (Tex. App.—Waco 2007, pet. ref'd).

Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause.  *Rodriguez v. State,* 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).  Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a set of neat legal rules."  *Id.* at 64 (quoting *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)).  While probable cause requires more than mere suspicion, the affiant need

not present evidence establishing the suspect's guilt beyond a reasonable doubt or by a preponderance of the evidence. *Moss v. State*, 75 S.W.3d 132, 138 (Tex. App.—San Antonio 2002, pet. ref'd); *see also Glaze,* 230 S.W.3d at 260 ("The complaint, however, 'need not contain sufficient evidence that would convince a jury of the defendant's guilt beyond a reasonable doubt.'") (quoting *McFarland,* 928 S.W.2d at 509-10).

To establish probable cause, there must be facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense. *Beverly v. State*, 792 S.W.2d 103, 104-05 (Tex. Crim. App. 1990); *see also Parker v. State*, 206 S.W.3d 593, 596 (Tex. Crim. App. 2006). A peace-officer affiant may rely on information provided by other officers engaged in the investigation. *Taylor v. State*, 82 S.W.3d 134, 138 (Tex. App.—San Antonio 2002, no pet.) (citing and quoting *Woodward v. State,* 668 S.W.2d 337, 344 (Tex. Crim. App. 1982) (en banc) ("[W]hen there has been some cooperation between law enforcement agencies or between members of the same agency, the sum of the information known to the cooperating agencies or officers at the time of an arrest is to be considered in determining whether there was sufficient probable cause therefor.").

## II.

In assessing the sufficiency of an arrest-warrant affidavit, the reviewing court is limited to the four corners of the affidavit.[1] *McLain v. State*, 337 S.W.3d 268, 271 (Tex.

---

[1] To the extent that each appellant's issue asserts in part that the State was required to introduce "evidence" at the hearings that establishes that each appellant committed the offense, we overrule in part the issue

Crim. App. 2011); *Glaze,* 230 S.W.3d at 260. Accordingly, and because of the constitutional preference for warrants, we apply a highly deferential standard in reviewing a magistrate's decision to issue a warrant. *Gates,* 462 U.S. at 234-37, 103 S.Ct. at 2330-31; *McLain,* 337 S.W.3d at 271. As long as the magistrate had a substantial basis for concluding that probable cause existed, the magistrate's probable-cause determination will be upheld. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331; *McLain,* 337 S.W.3d at 271. The affidavit is not to be analyzed hypertechnically. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331; *McLain,* 337 S.W.3d at 271. Rather, the reviewing court should interpret the affidavit in a common-sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences. *McLain,* 337 S.W.3d at 271; *Rodriguez,* 232 S.W.3d at 61.

### III.

At the hearing on Pilkington's application, the parties stipulated to admission of the testimony of Weathers, who had testified at his own habeas hearing before the same trial court earlier on that day, and the trial court took notice ("knowledge and information or recognition") of it.[2] The parties further stipulated to the arrest affidavits in both cases, which were identical except for personal identifiers of the suspects in the offense of engaging in organized criminal activity. In each hearing, the trial court found that, within

---

because the State did not have a burden to produce evidence apart from the affidavit and because the trial court was limited to the four corners of the affidavit.

[2] Weathers and Pilkington were (and have been represented) by the same counsel, and the State was likewise represented by the same attorneys. In Pilkington's hearing, the parties relied on Weathers's testimony from the Weathers hearing. But because our review is limited to the four corners of the affidavit, we cannot consider the testimony of Weathers in either appeal. *Nelson v. State,* No. 07-02-00527, 2004 WL 1947809, at *1 (Tex. App.—Amarillo Sept. 2, 2004, pet. ref'd) (not designated for publication).

its four corners, the arrest-warrant affidavit established probable cause and thus denied habeas relief.

**IV.**

A person commits the offense of engaging in organized criminal activity if, "with intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following: (1) murder, capital murder, …[or] aggravated assault … ." TEX. PENAL CODE ANN. § 71.02(a)(1) (West Supp. 2014).

Under the first main element of engaging in organized criminal activity, the State must show probable cause that a defendant intended to establish, maintain, or participate in either a combination *or* a criminal street gang. *Barrera v. State*, 321 S.W.3d 137, 152 (Tex. App.—San Antonio 2010, pet. ref'd). A criminal street gang is defined as three or more persons who have a common identifying sign or symbol, or an identifiable leadership, who continuously or regularly associate in the commission of criminal activities. TEX. PENAL CODE ANN. § 71.01(d). Membership in a criminal street gang may be established by the display of tattoos or other symbols representing gang membership. *Barrera*, 321 S.W.3d at 152 (citing *Garza v. State*, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007)).

The second main element of engaging in organized criminal activity can be committed by two means: Actual commission of the underlying offense, *or* conspiring to commit the underlying offense. *Id.* at 142-43. To establish the offense of engaging in organized criminal activity through a conspiracy, the State must present probable cause as to the commission of an overt act in pursuance of the agreement by both a defendant

*and* one or more members of the conspiracy.  Tex. Penal Code Ann. § 71.02(a); *Barrera,*

321 S.W.3d at 152 (citing *McIntosh v. State*, 52 S.W.3d 196, 199 (Tex. Crim. App. 2001)).

> With respect to the element requiring an overt act by the defendant himself, it is well established that the overt act need not be criminal in itself. *Barber,* 764 S.W.2d at 235.  Acts that promote or solicit an offense, and thus amount to liability as a party, may be used to meet the overt act element for organized criminal activity.  *Otto,* 95 S.W.3d at 284 (holding the law of parties is applicable to prosecution for organized criminal activity).  In holding the law of parties is applicable, the Court reasoned that "[b]ecause the 'overt act' element of organized criminal activity need not be criminal in itself, acts that suffice for party liability—those that encourage, solicit, direct, aid, or attempt to aid the commission of the underlying offense— would also satisfy the overt act element of section 71.02." *Id.* (citing *Barber,* 764 S.W.2d at 235).  In *Otto,* the appellants were the leaders of the Republic of Texas, an organization that functioned as a combination, and planned an aggravated kidnapping of residents who had reported their activities to law enforcement.  *Otto,* 95 S.W.3d at 283.  The evidence showed that, although not present during the kidnapping, the appellants planned the kidnapping, and were in radio contact with the abductors during the kidnapping, and helped negotiate the release of the victims.  *Id.* at 284.  The Court noted the appellants' position as leaders of the combination and held that "their involvement in the planning, execution and aftermath of the kidnapping was tantamount to encouraging, directing, aiding, or attempting to aid in the offense, and therefore, it authorized a conviction under the law of parties."  *Id.* at 285; *see Barber,* 764 S.W.2d at 235 n.1 (noting that a "ring leader" may be found guilty of engaging in organized criminal activity under section 71.02(a) based on evidence that he "(1) intended to participate in a criminal combination, and (2) performed the overt act of soliciting and organizing others in furtherance of the combination ...").

*Barrera*, 321 S.W.3d at 154 (footnote omitted).

> "Conspires to commit" means that a person agrees with one or more other people that one or more of them will engage in conduct that would constitute the offense and one or more of them perform an overt act in pursuance of the agreement.  Tex. Penal Code Ann. § 71.01(b). An agreement constituting "conspiring to commit" may be inferred from the acts of the parties.  *Id.*  To prove participation in the agreement, the State must prove the defendant had an intent to participate in a criminal combination and that the defendant performed some overt act, not

necessarily criminal, in furtherance of the agreement. *Nwosoucha v. State,* 325 S.W.3d 816, 831 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

*Lashley v. State*, 401 S.W.3d 738, 743 n.1 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Commission of only a single underlying offense is sufficient to prove engaging in organized criminal activity. *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). The gravamen of the offense is the continuity element, *id.*, and to satisfy that element, the State must "prove that a defendant intended to participate in a continuing course of criminal activity." *Lashley*, 401 S.W.3d at 744. "There must be proof of an intent to participate in a criminal combination that extends beyond a single criminal episode, *ad hoc* effort, or goal, regardless of whether multiple laws were broken within the confines of that episode or effort." *Id.* Under the statute, continuity can be satisfied by showing that a defendant participated in either a combination *or* a criminal street gang. *See* TEX. PENAL CODE ANN. § 71.02(a)(1).

**V.**

The arrest-warrant affidavit at issue states in pertinent part as follows:

My name is MANUEL CHAVEZ and I am commissioned as a peace officer with the City of Waco by The State of Texas. I hereby state upon my oath that I have reason to believe and do believe that heretofore, and before the making and filing of this Complaint, that on or about May 17, 2015, in McLennan County, Texas, the said _____[3] did then and there, as a member of a criminal street gang, commit or conspire to commit murder, capital murder, or aggravated assault, against the laws of the State.

My probable cause for said belief and accusation is as follows:

Three or more members and associates of the Cossacks Motorcycle Club (Cossacks) were in the parking lot of the Twin Peaks restaurant in Waco,

---

[3] The parties stipulated in each hearing that Pilkington and Weathers were named in the affidavits at issue.

McLennan County Texas. Three or more members and associates of the Bandidos Motorcycle Club (Bandidos) arrived in the parking lot of the Twin Peaks restaurant and engaged in an altercation with the members and associates of the Cossacks. During the course of the altercation, members and associates of the Cossacks and Bandidos brandished and used firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons. The weapons were used to threaten and/or assault the opposing factions. Cossacks and Bandidos discharged firearms at one another. Members of the Waco Police Department attempted to stop the altercation and were fired upon by Bandidos and/or Cossacks. Waco Police Officers returned fire, striking multiple gang members. During the exchange of gunfire, multiple persons where [*sic*] shot. Nine people died as a result of the shooting between the members of the biker gangs. Multiple other people were injured as a result of the altercation. The members and associates of the Cossacks and Bandidos were wearing common identifying distinctive signs or symbols and/or had an identifiable leadership and/or continuously or regularly associate in the commission of criminal activities. The Texas Department of Public Safety maintains a database containing information identifying the Cossacks and their associates as a criminal street gang and the Bandidos and their associates as a criminal street gang.

After the altercation, the subject was apprehended at the scene, while wearing common identifying distinctive signs or symbols or had an identifiable leadership or continuously or regularly associated in the commission of criminal activities.

After the altercation, firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons were recovered from members and associates of both criminal street gangs.

Multiple motorcycles with common identifying signs or symbols of the Cossacks and Bandidos and their associates were recovered at the scene. Additional weapons including: firearms, ammunition, knives, brass knuckles, and other weapons were found on the motorcycles.

The four corners of the affidavit show the following facts in support of probable

cause:

- On May 17, 2015, in McLennan County, three or more members of the Cossacks motorcycle club were in the parking lot of the Twin Peaks restaurant, then three or more members of the Bandidos motorcycle club arrived in the Twin Peaks

parking lot.

- The Cossacks and Bandidos are known criminal street gangs who have distinctive identifying signs and symbols, an identifiable leadership, and continuously or regularly associate in the commission of criminal activities.

- An altercation arose between members of the Cossacks and members of the Bandidos. During the altercation, members of both clubs produced firearms and other deadly weapons, and those weapons were used to assault and threaten members of the opposing club.

- Police officers attempting to end the altercation were fired on, and police officers returned fire. Nine people died as a result of the incident, and many others were injured.

- Members of the Cossacks and Bandidos were identifiable by the distinctive signs and symbols they were wearing.

- Pilkington and Weathers were apprehended at the scene of the altercation, and they were wearing distinctive signs or symbols identifying each of them as a member of a criminal street gang.

- Firearms and other weapons were recovered from the apprehended persons who were identifiable as members of the respective criminal street gangs. Numerous motorcycles were at the scene bearing distinctive signs or symbols identifying them as belonging to members of the respective gangs, and additional firearms and other weapons were recovered from the motorcycles present at the scene.

The State asserts that the following reasonable inferences can be drawn from the affidavit:

1. A large number of people were involved in the altercation, as indicated by the nine fatalities and multiple persons who were injured.

2. The altercation started when members of the Bandidos appeared at a gathering of the Cossacks.

3. The actions and reactions by members of the rival gangs were so volatile and lethal as to result in nine fatalities.

4. The profusion of firearms and other weapons recovered from the rival gang members reflected anticipation or planning of a violent encounter.

5. The display of distinctive identifying signs and symbols by members of the rival factions present at the scene reflected coordinated planning and action specific to the two rival groups.

Plainly, the affidavit does not allege that Pilkington or Weathers committed one of the underlying offenses of capital murder, murder, or aggravated assault, one of the two means of committing the second main element. *See* TEX. PENAL CODE ANN. § 71.02(a)(1) ("the person commits or conspires to commit one or more of the following"). Thus, we turn to each appellant's specific complaint that the affidavit does not allege an agreement; *i.e.*, that he conspired to commit one of the underlying offenses—that he agreed "with one or more persons that they or one or more of them engage in conduct that would constitute the offense … ." *Id.* § 71.01(b). The statute specifically states that the "agreement constituting conspiring to commit may be inferred from the acts of the parties." *Id.* And in reviewing the affidavit, the magistrate was permitted to draw reasonable inferences from the facts in the affidavit. We conclude that the magistrate could have reasonably inferred from the profusion of weapons at the scene and the subsequent violence that Pilkington and Weathers, as members of a criminal street gang, each agreed "with one or more persons that they or one or more of them engage in conduct that would constitute the offense" of capital murder, murder, or aggravated assault.

Lastly, we address each appellant's specific complaint that the affidavit does not allege that each of them performed "an overt act in pursuance of the agreement." *Id.* At the hearings, the State argued that, on the day in question, Pilkington and Weathers committed overt acts by showing up at the restaurant—by being present and wearing

their distinctive signs or symbols identifying each of them as a member of a criminal street gang, along with other members of a criminal street gang. As noted above, the overt act need not be criminal in itself. *See Barrera*, 321 S.W.3d at 154. The magistrate could have reasonably inferred that their presence and wearing their distinctive signs or symbols identifying each of them as a member of a criminal street gang was an overt act. The magistrate also could have reasonably inferred from their presence, from their wearing their distinctive signs or symbols, and from the profusion of weapons at the scene and the subsequent violence that each of them performed an overt act by either encouraging, soliciting, directing, aiding, or attempting to aid the commission of the underlying offenses of capital murder, murder, or aggravated assault. *See id.*

In conclusion, by applying the highly deferential standard in reviewing the magistrate's decision to issue the arrest warrant based on the four corners of the affidavit, we find that the magistrate had a substantial basis for concluding that probable cause existed to believe that Pilkington and Weathers committed the offense of engaging in organized criminal activity.[4] We overrule Pilkington's and Weathers's sole issue and affirm the trial court's denial of habeas relief in each case.[5]

REX D. DAVIS
Justice

---

[4] We reiterate that the affidavit does not have to establish the suspect's guilt beyond a reasonable doubt or by a preponderance of the evidence.

[5] To expedite these matters, we invoke Rule 2 to submit these cases and issue this opinion without notice under Rule 39.8. *See* TEX. R. APP. P. 2; 39.8.

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray dissents with a note)*
Affirmed
Opinion delivered and filed August 20, 2015
Publish
[CR25]

*(Chief Justice Gray dissents.  A separate opinion will not issue.)

