**Opinion filed August 30, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00338-CR

_____

### PHILLIP JAY WALTER, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Callahan County, Texas**

**Trial Court Cause No. 7138**

**O P I N I O N**

At the conclusion of a joint trial, the jury convicted Appellant, Phillip Jay Walter, Jr., and his wife, Violet Maree Walter, of murder, robbery, and theft of a firearm.[1]  *See* TEX. PENAL CODE ANN. §§ 19.02, 29.02, 31.03 (West 2019).  The trial court assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for forty years for the murder conviction

---

[1]In this opinion, we will refer to Phillip Jay Walter, Jr., as "Appellant" and to his wife, Violet Maree Walter, as "Walter."

and for twenty years for the robbery conviction. The trial court also assessed Appellant's punishment at confinement in the State Jail Division of the Texas Department of Criminal Justice for a term of two years for the conviction for theft of a firearm. Additionally, the trial court ordered that the sentences are to run concurrently.[2] Appellant challenges his convictions in a single issue on appeal. We affirm.

*Background Facts*

Don Allen, a police officer with the Abilene Police Department, was found dead at his home in Clyde on August 31, 2015. Approximately one week before his death, Allen placed an advertisement on Craigslist seeking an unconventional sexual encounter. Walter responded to Allen's post on August 29, 2015, writing: "Still looking? Sexy couple in their 20s. . . . Down for anything." For the next couple of days, Walter and Allen e-mailed each other about the prospect of a sexual encounter between Appellant, Allen, and Walter. Eventually, Allen invited Appellant and Walter to his home in Clyde on the afternoon of August 31.

That evening, Allen's fiancée found Allen dead in their bedroom, lying facedown on the floor. Allen was wearing only a T-shirt and socks; he was otherwise naked. His hands and ankles had been bound by USB cords, with his hands tied behind his back. Another USB cord, along with Allen's shorts, was loosely wrapped around Allen's face and neck. There was no evidence of forced entry or a struggle inside the home.

One of Allen's neighbors told investigators that he saw a male and a female arrive at Allen's home that afternoon. Another one of Allen's neighbors saw a vehicle near Allen's home. The neighbor provided the police with the

---

[2]We note that Walter received the same sentences.

vehicle's make, color, and model. Investigators discovered that Appellant owned a vehicle similar to the vehicle seen near Allen's home.

Video surveillance from a pawn shop in Abilene showed Appellant, accompanied by Walter, pawning four video games and a woman's bracelet on the evening of August 31. The same four video games had been recently played on Allen's video game console, and Allen's fiancée identified the pawned bracelet as her bracelet. Investigators also identified Appellant's fingerprint on a water bottle at Allen's home.

Appellant and Walter were subsequently arrested. Police officers searched their apartment pursuant to a search warrant. In the apartment, the police found an Abilene Police Department badge, a taser, handcuffs, and an ASP case that had been issued to Allen as an Abilene Police Officer. Allen's firearm was returned to police by a confidential informant, and Allen's police radio was found on the side of a highway, two miles east of Clyde.

During the search of the apartment, the police also found Appellant's and Walter's cell phones. The police searched the phones pursuant to additional search warrants. Walter's text messages to Appellant revealed that they were experiencing financial difficulties at the time and were in the process of being evicted from their apartment. Walter sent Appellant several text messages on the day of Allen's death, urging Appellant to do something to remedy their dire financial situation. For example, Walter sent Appellant the following text messages on August 31: "Go f--k someone else and restore our s--t," "Hurry up and fix this," "DO SOMETHING NOW," and "You NEED to do this. Your fear of a police report versus LOSING us should be bigger. Your need to feed and house your CHILDREN should be bigger tha[n] ANYTHING."

After Walter set up the meeting with Allen at Allen's home in Clyde, Walter texted Appellant that "[w]e have that Clyde lick," "[w]e MUST do it and do it hard,"

and "[t]he lick is waiting." The State presented evidence that a "lick" refers to robbery or thievery.

Dr. Tasha Greenberg, a deputy medical examiner at the Tarrant County Medical Examiner's Office, performed an autopsy on Allen's body. Dr. Greenberg testified that she observed multiple areas of bleeding "into the muscles of the front of the neck," along with a fracture of the thyroid cartilage, specifically the right cornu. There were also lacerations of the lower lip. Dr. Greenberg determined that the cause of death was asphyxia, which she described as a lack of oxygen to the brain. The evidence of injury to the neck indicated to her that there was a "compression of the vessels in the neck." Dr. Greenberg also testified that there was a likelihood that pressure was applied to Allen's chest or back.

Dr. Greenberg did not see any evidence that the USB cord that was found around Allen's neck was used as a ligature. In this regard, this cord was somewhat loose around Allen's neck. Dr. Greenberg testified that the lack of an imprint on Allen's neck indicated that a broader or softer object was used to asphyxiate Allen.

Two pieces of a braided leather belt were found near Allen's body. Allen's fiancée testified that this belt was neither her belt nor Allen's belt. Allen's father testified that this belt was smaller than the belts found inside the home that belonged to Allen. DNA testing of both ends of the belt revealed the presence of DNA from three contributors, and Appellant and Walter could not be excluded as the contributors. Additionally, Allen could not be excluded as a contributor of DNA on one end of the belt. Appellant could not be excluded as a contributor of DNA found on swabs taken from Allen's neck, and Appellant's DNA was also not excluded from DNA recovered from the USB cords wrapped around Allen's wrists.

Dr. Greenberg determined that the manner of death was homicide. "Homicide" is generally defined as "[t]he killing of one person by another." *Homicide*, BLACK'S LAW DICTIONARY (10th ed. 2014). She testified that choking

4

someone to render him or her unconscious would be an act that would be clearly dangerous to human life and that choking someone to the point of unconsciousness could result in serious bodily injury. She further opined that voluntary choking is dangerous.

During closing argument, Appellant and Walter argued that Allen consented to being choked and that he died during "high-risk sex." To support this theory, the defense stressed the state in which Allen's body was found and the lack of any evidence indicating a struggle or resistance to the USB cables around his wrists or ankles.

*Analysis*

Appellant challenges his convictions for murder and robbery in a single issue. He asserts that the trial court erred by submitting a jury instruction on the law of parties. Specifically, he asserts that it was error to submit a jury instruction permitting him to be convicted as a party because there was no evidence that Walter "touched Don Allen so as to support a conclusion [that] she did anything to cause him death for the purposes of murder or bodily injury for the purposes of robbery." Appellant contends that "there is not sufficient evidence to charge [him] for her acts under the law of parties." We disagree.

We note at the outset that Walter also filed an appeal from her convictions for murder and robbery. The cause number of Walter's appeal is 11-17-00002-CR, styled *Violet Maree Walter v. State of Texas*. We are issuing our opinion and judgment affirming Walter's convictions at the same time we are issuing the opinion and judgment affirming Appellant's convictions. In the opinion in No. 11-17-00002-CR, we have determined that the evidence is sufficient to support Walter's convictions for murder and robbery both as a principal and as a party.

The indictment charged Appellant with murder under all three statutorily defined ways to commit the offense. *See* PENAL § 19.02(b)(1)–(3). Under these

5

statutory provisions, a person commits the offense of murder if he (1) "intentionally or knowingly causes the death of an individual," (2) "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual," or (3) "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." *Id.* These three methods of committing murder are not separate offenses but, rather, are alternative methods of committing the same offense. *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

Under Section 19.02(b)(1), the indictment alleged that Appellant intentionally or knowingly caused Allen's death by asphyxiation by choking, strangling, or otherwise impeding his breathing. Under Section 19.02(b)(2), the indictment alleged that Appellant committed an act clearly dangerous to human life by choking, strangling, or otherwise impeding Allen's breathing with the intent to cause serious bodily injury. Under Section 19.02(b)(3), the indictment alleged that Appellant committed or attempted to commit robbery or felony theft and that, in the course of and in furtherance of the commission or attempt, he committed an act clearly dangerous to human life by choking, strangling, or otherwise impeding Allen's breathing. *See* PENAL § 29.02 (robbery statute); PENAL § 31.03(e)(4)(C) (theft of a firearm is a state jail felony). When an indictment alleges multiple felonies in a prosecution under Section 19.02(b)(3), the specifically named felonies are not elements about which the jury must be unanimous. *White v. State*, 208 S.W.3d 467, 469 (Tex. Crim. App. 2006).

With respect to Appellant's conviction for robbery, the indictment alleged that, while in the course of committing a theft, and with the intent to obtain and

maintain control over property, to wit: a police badge, an asp baton, or a taser, Appellant intentionally, knowingly, or recklessly caused bodily injury to Allen. As relevant to this case, Section 29.02 of the Penal Code provides that a person commits the offense of robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another." PENAL § 29.02(a)(1). Theft is the unlawful appropriation of property "with intent to deprive the owner of the property." *Id.* § 31.03(a). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1).

The court's charge allowed the jury to convict Appellant of murder and robbery either as a primary actor or as a party with Walter. Under Section 7.01 of the Penal Code, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." PENAL § 7.01(a) (West 2011); *see Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011). The court's charge permitted the jury to find that Appellant was criminally responsible for the conduct of Walter under Section 7.02(a)(2) of the Penal Code. *See* PENAL § 7.02(a)(2). This statute provides that "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.*; *see Adames*, 353 S.W.3d at 862.

We review a claim of jury charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *See State v. Ambrose*, 487 S.W.3d 587, 594 (Tex. Crim. App. 2016). Our first duty in analyzing a jury charge issue is to decide whether error exists. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017) (citing *Barrios v. State*, 283 S.W.3d 348, 350 (Tex.

7

Crim. App. 2009)). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Id.* If a timely objection was lodged at trial, reversal is required if the error resulted in "some harm" to the defendant. *Elizondo v. State*, 487 S.W.3d 185, 204 (Tex. Crim. App. 2016). Appellant objected to the inclusion of the instruction on the law of parties in the trial court's charge based on his contention that there was no evidence to support its submission.[3] Appellant asserts that he has suffered some harm requiring reversal. Because we conclude that the trial court's charge was not erroneous in this case, we do not conduct a harm analysis. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)).

Generally, the trial court may instruct the jury on the law of parties if "there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). "Regardless of whether it is pled in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence." *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013). The State does not have to prove it is correct regarding the defendant's participation as a party; instead, the State must only show that the evidence raises the issue to be entitled to its submission. *Id.* at 125. Thus, a trial court errs by submitting an instruction under the law of parties if the evidence adduced at trial would not support a jury verdict under the law of parties. *Ladd*, 3 S.W.3d at 564.

The jury is entitled to consider the events that took place before, during, and after the commission of the crime. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996).

---

[3]Appellant did not object to the particular manner in which the trial court's charge addressed his status as a party in an attempt to narrow or modify the language of the charge. *See Ferreira v. State*, 514 S.W.3d 297, 302 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012)).

"There must be sufficient evidence of an understanding and common design to commit the offense." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Guevara*, 152 S.W.3d at 49). "Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties." *Id.* (citing *Guevara*, 152 S.W.3d at 49). Mere presence of a person at the scene of a crime—either before, during, or after the offense—or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense; however, combined with other incriminating evidence, it may be sufficient to sustain a conviction. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985); *accord Gross*, 380 S.W.3d at 186. Additionally, allegations that a party is guilty under the law of parties need not be specifically pleaded in the indictment. *See Barrera v. State*, 321 S.W.3d 137, 144 n.1 (Tex. App.—San Antonio 2010, pet. ref'd).

Appellant acknowledges on appeal that "there is probably legally sufficient evidence to convict him under a direct culpability theory." In this regard, Appellant has not challenged the sufficiency of the evidence supporting his convictions for murder and robbery. If the evidence "clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Ladd*, 3 S.W.3d at 564–65 (quoting *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986)). An appellant is not harmed by the inclusion of an instruction on the law of parties if the jury "almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather based the verdict on the evidence tending to show appellant's guilt as a principal actor." *Id.* at 565. If guilt as a party would be "an irrational finding under the evidence, then it is highly unlikely that a rational jury would base its verdict on a parties theory." *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999).

The evidence in this case was sufficient to establish Appellant's guilt as a primary actor. Thus, even if we assume error in the jury charge by the inclusion of the instruction on the law of parties, the error is harmless because the evidence supports Appellant's guilt as a primary actor. *See Cathey*, 992 S.W.2d at 466.

In Cause No. 11-17-00002-CR, we determined that the evidence was sufficient to support Walter's participation in the murder and robbery as a primary actor. This determination is dispositive of Appellant's contention that there was no evidence to support the inclusion of the instruction of his culpability under the law of parties. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


August 30, 2019

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[4]

Willson, J., not participating.

---

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.